# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6715 | **DATE** | 12/19/2003 |
| **CASE TITLE** | Ortiz vs. Robinson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [15-1] is granted with respect to Counts I and II. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the state law claim in Count III. Thus, Count III is dismissed without prejudice for lack of subject matter jurisdiction. Judgment entered in favor of defendant on Counts I and II. All future dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | DEC 2 2 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | 28 |
| X | Mail AO 450 form. Mailed by MD. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/19/2003 date mailed notice | |
| MD courtroom deputy's initials | | 03 DEC 19 AM 4:48 OI 03-0314 Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAUL ORTIZ ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 6715 |
| ) | Judge Joan H. Lefkow |
| OFFICER JOSEPH ROBINSON ) | |
| Individually, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Raul Ortiz ("Ortiz"), has filed a three-count complaint against defendant, Officer Joseph Robinson ("Robinson"). Count I alleges false arrest and is brought under 42 U.S.C. §§ 1983 & 1988 and Illinois common law. Count II alleges false imprisonment and is brought under 42 U.S.C. §§ 1983. Count III alleges malicious prosecution and is brought under Illinois common law.[1] Before the court is Robinson's Motion for Summary Judgment. This court has jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1343. For the reasons set forth below, the court grants summary judgment on Counts I and II in favor of Robinson and dismisses Count III without prejudice for lack of subject matter jurisdiction.

DOCKETED

DEC 2 2 2003

---

[1] Ortiz's complaint states that count III is brought "pursuant to 42 U.S.C. § 1983 and § 1988 of the United States Constitution (*sic*), and the laws of the state of Illinois." In *Newsome* v. *McCabe*, 256 F.3d 747, 750-52 (7th Cir. 2001), the Seventh Circuit held that there is "no constitutional right not to be prosecuted without probable cause." A plaintiff therefore may not state a § 1983 claim simply by stating that he was maliciously prosecuted. *Id*; *see also Penn* v. *Harris*, 296 F.3d 573, 576 (7th Cir. 2002). Thus, count III of Ortiz's complaint only states a claim under Illinois common law.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

Ortiz is a Hispanic male. (Oriz Dep. at 87.) He is six feet tall and has dark hair. (Def. L.R. 56.1 ¶ 8.) On January 29, 2002, Ortiz lived at 1818 South East Avenue, Berwyn, Illinois. (*Id.* ¶ 1.) On January 28, 2002, Ortiz returned home from work at approximately 10:30 p.m. (Pl. Stat. of Add'l Facts ¶ 12.) After falling asleep for a few hours, Ortiz woke up and walked outside to move his garbage can for garbage pick up. (Def. L.R. 56.1 ¶ 5.) He was wearing

uniform jeans, a shirt, and a blue Cathart jacket with a black stripe on it. (Def. L.R. 56.1 ¶ 2.) The jacket had a "fold-away hood" that was folded away. (Ortiz Dep. at 87.)

At approximately 2:00 a.m. the same night, Officer Robinson of the Berwyn Police Department was on patrol and was sitting in a parking lot in the 1300 block of Harlem Avenue facing west. (Pl. Stat. of Add'l Facts ¶ 1.) Robinson observed a vehicle traveling southbound with no front license plate. (*Id.* ¶ 2.) The car was approximately twenty-five to thirty feet from Robinson when he first observed it, and it was traveling at approximately twenty-five to thirty miles an hour. (*Id.* ¶ 3.) The driver of the vehicle was wearing a dark hooded sweatshirt with the hood up. (*Id.* ¶ 4.) At Ortiz's criminal trial, Robinson testified that he observed the driver's face as Robinson exited the parking lot to follow the vehicle. (Tr. Transcript, at 47.) In his deposition testimony, Robinson testified that he proceeded alongside the vehicle for approximately five seconds, at which time he observed the driver's face, and then began to follow behind the vehicle. (Robinson Dep. at 25-6.) Robinson then ran the rear license plate on his terminal and discovered that the license plate was registered to a different vehicle. (*Id.* at 47-8.) Robinson activated his mars lights and the vehicle sped off, eventually coming to a stop at 21st Avenue and Wesley. (Pl. Stat. of Add'l Facts ¶ 7.)

By the time Robinson arrived at the vehicle, the driver had exited and was out of sight. (Pl. Stat. of Add'l Facts ¶ 8.) Robinson testified in his deposition that he did not see the driver exit the vehicle. (Robinson Dep. at 47.) However, in his incident report, Robinson stated that he observed the driver exit the vehicle. (Pl. Stat. of Add'l Facts, Ex. H.) At 21st Avenue and Wesley, two individuals, Kristina Senkevich ("Senkevich") and Roza Ilieva ("Ilieva"), saw the individual flee from the car. They observed him for approximately two seconds. (Pl. Stat. of

3

Add'l Facts ¶ 26.) When Robinson arrived, Ilieva told him that she did not see the face of the individual fleeing the vehicle, but that he was tall and was wearing black sweatshirt, black pants, and had a hood on his head. (Def. L.R. 56.1 ¶ 11.) Senkevich told Robinson that she did not see the individual's face, but that he was wearing blue jeans and a black hooded sweatshirt with the hood up. She also noticed that a belt was hanging between the individual's legs. (Def. L.R. 56.1 ¶ 16.)

Robinson radioed to the police dispatcher and to all other units in the area that he was pursuing a tall Hispanic male wearing dark clothing and a hooded sweatshirt or jacket in the area of 21st and Wesley. (Def. L.R. 56.1 ¶ 21; Tr. Transcript, at 51.) Officer Nicholas Schiavone ("Schiavone") proceeded to the area, parked his squad car, and began a foot patrol in the residential area. (Def. L.R. 56.1 ¶ 22.) He soon came upon Ortiz in the alley at 1818 South East Avenue. (*Id.* ¶ 23.) Schiavione identified himself as a Berwyn Police Officer and asked Ortiz if he lived in the house at 1818 South East Avenue. Ortiz replied that he did. (Pl. Stat. of Add'l Facts ¶ 19.) Schiavione then told Ortiz to put his hands on the garage door and began to frisk him. (*Id.*) Schiavione called Robinson to the scene. (Pl. Stat. of Add'l Facts ¶ 24.) Without having a conversation with Ortiz, Robinson took Ortiz to the corner of 21st and Wesley, where the officers first accused Ortiz of stealing the vehicle. (*Id.* ¶ 25.) Ortiz explained that he had just left his house and could not have stolen the car. (*Id.*)

One of the officers asked Senkevich and Ilieva to come down to view Ortiz. (Senkevich Dep. at 25-26.) Senkevich told the officers that Ortiz's clothing "exactly looked like the person that we saw earlier." (*Id.* at 29.) Senkevich stated that Ortiz had the same clothes, height, and build of the individual she had seen fleeing the vehicle. She also noticed that Ortiz had a belt

4

hanging down like the individual she had seen. (Def. L.R. 56.1 ¶ 19.) Ilieva told the officers that she was not sure if Ortiz was the person she had seen earlier, but that "it looked like the same clothes." (Ilieva Dep. at 32.)

The Officers then took Ortiz to the police station. Neither Ilieva nor Senkevich were taken to the police station for any further questioning or to identify anyone other than Ortiz, and neither of them were questioned on any other day by Robinson. (Pl. Stat. of Add'l Facts ¶ 35.) Robinson verified that the vehicle he had seen was stolen, but did no further investigation into Ortiz's role in the incident. (*Id.* ¶ 40.) In the early morning of January 30, 2002, Ortiz's wife came to the police station and Robinson spoke to her regarding Ortiz's bond. (*Id.* ¶ 42.) Robinson also told Ortiz's wife that Ortiz had run from him. However, Ortiz's wife told Robinson that Ortiz could not have run because he had an injury. (*Id.*) Ortiz asked Robinson to speak with his wife regarding his whereabouts prior to his arrest, but Robinson failed to do so. (*Id.* ¶ 43.) Ortiz also asked Robinson to fingerprint the stolen vehicle, but Robinson did not. (*Id.* ¶ 44.) Ortiz was held at the station until he was charged with possession of a stolen vehicle, possession of burglary tools, and various traffic violations. (*Id.* ¶ 39.) After a bench trial, Ortiz was found not guilty of all charges. (*Id.* ¶ 45.)

## DISCUSSION

### I. False Arrest and False Imprisonment

Robinson argues that he is entitled to qualified immunity against Ortiz's claims of false arrest and false imprisonment. Qualified immunity will shield Robinson from liability "if a reasonable officer could have believed [Ortiz's arrest] to be lawful, in light of clearly established law and the information [Robinson] possessed." *Hunter* v. *Bryant*, 502 U.S. 224, 227

(1989)(citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). When an officer asserts qualified immunity in defense of an allegation of unlawful arrest, the court must determine whether the officer "actually had probable cause [for the arrest] or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). In other words, "only if no reasonable officer could have believed that the officers in question had probable cause will qualified immunity cease to protect the officers." *Huffman v. Grinnell*, 880 F. Supp. 1194, 1199 (N.D. Ill. 1995)(citing *Klein v. Ryan*, 847 F.2d 368, 375 (7th Cir. 1988). Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335 (1986).

Probable cause for arrest exists for a law enforcement officer when "the facts and circumstances within [his] knowledge and of which [he has] sufficiently trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). "Probable cause demands even less than probability; it requires more than bare suspicion but need not be based on evidence sufficient to support a conviction nor even a showing that the officer's belief is more likely true than false." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)(internal quotations and citations omitted).

Here, the court need not determine whether Robinson had probable cause to arrest Ortiz because a reasonable officer "could have believed that [Robinson] had probable cause." *Huffman*, 880 F. Supp. at 1199. Based on his own observations of the driver of the stolen vehicle and the descriptions of the individual fleeing the vehicle provided by Senkevich and Ilieva,

6

Robinson radioed that he was in pursuit of a tall Hispanic male wearing dark clothing and a hooded sweatshirt or jacket in the area of 21st and Wesley. Importantly, he did this before he had seen Ortiz. Schiavione then saw Ortiz–a six feet tall Hispanic male wearing dark clothing–in an alley near 21st and Wesley, believed that he matched the description, detained him, and radioed Robinson. When Robinson arrived, he did not immediately arrest Ortiz. Instead he took Ortiz back to the corner of 21st and Wesley and asked Senkevich and Ilieva if Ortiz was the man they had seen fleeing the stolen vehicle. Senkevich and Ilieva confirmed that Ortiz's clothing matched that of the man they had seen. Senkevich even pointed out that Ortiz had a belt hanging from his pants like the man she had seen. Based on this information, a reasonable officer could have believed that Robinson had probable cause to arrest Ortiz.

Ortiz argues, however, that Robinson had a duty to investigate whether or not Ortiz was the individual who had been driving the stolen car. Ortiz ignores the fact that Robinson took Ortiz back to 21st and Wesley, where Senkevich and Ilieva confirmed that Ortiz's clothing matched the man they had seen. Moreover, an officer need not "forego an arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss* v. *City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). Given that the court holds that a reasonable officer could have believed Robinson had probable cause to arrest Ortiz, Robinson's failure to further investigate Ortiz's claims of innocence cannot overcome Robinson's qualified immunity defense.

## II. Malicious Prosecution

In *Newsome* v. *McCabe*, 256 F.3d 747, 750-52 (7th Cir. 2001), the Seventh Circuit held that there is "no constitutional right not to be prosecuted without probable cause." A plaintiff therefore may not state a § 1983 claim simply by stating that he was maliciously prosecuted. *Id*;

*see also Penn* v. *Harris*, 296 F.3d 573, 576 (7th Cir. 2002). Thus, count III of Ortiz's complaint does not state a claim under federal law. The court declines to exercise supplemental jurisdiction over this claim. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court dismissed all claims over which it has general jurisdiction."); *Groce* v. *Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). As such, the court dismisses Count III without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated above, Robinson's motion for summary judgment (#15) is granted with respect to Counts I and II. Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over the state law claim in Count III. Thus, Count III is dismissed without prejudice for lack of subject matter jurisdiction. The clerk is instructed to enter judgment in favor of the defendant on Counts I and II. All future dates are stricken. This case is terminated.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Date: December 19, 2003